# THE UNITED STATES OF AMERICA *vs.* LORRIN A. THURSTON, *et al.*

## March 2, 1911.

*Condemnation proceedings—Sufficiency of allegations of petition for:* The act of Congress of August 1, 1888, 25 Stat. L. 357, taken together with the provisions contained in chapter 40 of the Revised Laws of Hawaii, require that a petition to condemn land by the United States should show: That the Secretary of the Treasury is authorized to procure real estate for the erection of a public building; that in his opinion it is necessary or advantageous to the government to acquire, by condemnation under judicial process, the specific land sought to be condemned; that such land is to be put to a specified public use; that the land sought to be condemned includes either the whole or only a part of an entire tract, describing each piece of land included therein; and must be accompanied by a map correctly delineating the land.

*Same—What petition need not show:* It is not necessary to allege in such petition that there has been an inability to agree upon the amount to be paid for the land, nor that Congress has made an appropriation of money for the payment of compensation.

*Same—Necessity for taking property:* The necessity for the taking of private property by the United States is determined by Congress, though the selection of the particular property to be taken may be delegated to a designated officer.

*Pleading—Conclusions of law and of fact:* An allegation that ''all preliminary steps required by law have been taken and exist, to entitle your petitioner to institute these proceedings,'' is not a mere conclusion of law, but the statement of an ultimate fact.

*Prayer of petition—Jury trial—Separate trials:* The prayer of the petition set forth in the opinion would not prevent the determination of the value of the land proposed to be taken by a jury, nor prevent separate trials in case the defendants may be entitled thereto.

*Eminent Domain*: Demurrer to petition.

*R. W. Breckons,* U. S. District Attorney, for the Plaintiff.

*Holmes, Stanley & Olson; Kinney, Ballou, Prosser & Anderson; Thompson, Clemons & Wilder; Smith, Warren & Hemenway;* and *Lorrin Andrews,* for the Defendants.

ROBERTSON, J. The complaint in this case, omitting the title and caption, is as follows:

## PETITION.

### I.

Now comes the United States of America, by Robert W. Breckons, United States Attorney within and for the District and Territory of Hawaii, and represents that, by an act of the Congress of the United States of America, approved on the 25th day of June, A. D. 1910, entitled " An act to increase the limit of cost of certain public buildings, to authorize the enlargement, extension, remodeling, or improvement of certain public buildings, to authorize the erection and completion of public buildings, to authorize the purchase of sites for public buildings, and for other purposes," the Secretary of the Treasury of the United States was thereby authorized and directed to acquire, by purchase, condemnation or otherwise, certain ground for the enlargement of the existing site for the use and accommodation of United States post-office, United States custom-house, and other governmental offices at Honolulu, Territory of Hawaii.

### II.

Plaintiff and petitioner further represents that the present site, owned by the United States of America, acquired for the purpose of erecting thereon a building for the use and accommodation of the United States post-office, United States custom-house, and other governmental offices at said Honolulu, Territory of Hawaii, is described as follows, to-wit:

From an Hawaiian territorial government survey monument which is 10 feet (measured southeastwardly at right angles) from the northwest line of Alakea street, and which is also 8 feet from the southwest line of Merchant street (measured northeastwardly at right angles therefrom) measure by true azimuths 135° 17′ 30″, 490.3 feet to a copper bolt set in the sidewalk 5 feet (measured northeastwardly at right angles) from the southwest line of Merchant street; thence by true azimuths 234° 27′, 37 feet across Merchant street to the northwest line thereof, for a place of beginning; thence by true azimuths:

1. 145° 00′, 53.3 feet along said northeast line of Merchant street to a point which is 325° 00′, 35.55 feet from the most southerly corner of the J. A. Cummins building; thence

2. 235° 31′, 230.3 feet along the southeast line of the E. O. Hall & Sons' building produced and along said line of said building to the southwest line. of King street; thence

3. 323° 13′, 134.85 feet along said southwest line of King street to the most northerly corner of the Emmeluth building; thence

4. 322° 53′, 40 feet along the northeast line of said Emmeluth building (which line is also the aforesaid southwest line of King street) to the northeast corner thereof, which is also on the northwest line of Bishop street, as proposed; thence

5. 52° 57′, 233 feet along the. said northwest line of Bishop street as proposed to the northeast line of Merchant street; thence

6. 143° 54′, 131.95 feet along said northeast line of Merchant street to the place of beginning.

Containing 41,817.60 square feet, more or less.

### III.

Plaintiff and petitioner further represents that the land desired for the enlargement of the said last described site,—the entire site to be used for the purposes aforesaid,—is described as follows, to-wit:

From an Hawaiian territorial government survey monument which is 10 feet (measured southeastwardly at right angles) from the northwest line of Alakea street, and which is also 8 feet from the southwest line of Merchant street (measured northeastwardly at right angles therefrom), measured by true azimuths 135° 17′ 30″, 490.3 feet to a copper bolt set in the sidewalk 5 feet (measured northeastwardly at right angles) from the southwest line of Merchant street; thence by true azimuths 234° 27′, 37 feet across Merchant street to the northeast line thereof; thence 145° 00′, 53.3 feet along the said northeast line of Merchant street to a place of beginning; thence by true azimuths and distances as follows:

1.  235° 31′ 00″, 230.3 feet along the northwesterly line of the property of the United States to a point in the southwest line of King street; thence

2.  143° 16′ 20″, 96.6 feet along the southwesterly line of King street to the south corner of King and Fort streets; thence

3.  60° 52′ 30″, 228.51 feet along the southeasterly line of Fort street to the east corner of Fort and Merchant streets; thence

4.  325° 02′ 00″, 117.87 feet along the northeast side of Merchant street to the point of beginning. Containing an area of 24,512 square feet, more or less.

## IV.

And plaintiff and petitioner further represents that the entire site, to be used for the purposes aforesaid, is a tract of land situated and located in Honolulu, in the Territory of Hawaii, enclosed within the limits and boundaries of the streets known as Bishop street, as King street, as Fort street, and as Merchant street; said entire site being described as follows, to-wit:

From an Hawaiian territorial government survey monument which is 10 feet (measured southeastwardly at right angles) from the northwest line of Alakea street, and which is also 8 feet from the southwest line of Merchant street (measured northeastwardly at right angles therefrom), measured by true azimuths 135° 17′ 30″, 490.3 feet to a copper bolt set in the sidewalk 5 feet (measured northeastwardly at right angles) from the southwest line of Merchant street; thence by true azimuths 234° 27′, 37 feet across Merchant street to the northeast line thereof; thence 145° 00′, 53.3 feet along the said northeast line of Merchant street to a place of beginning; thence by true azimuths and distances as follows:

1.  145° 02′ 00″, 117.87 feet along the northeast line of Merchant street; thence

2.  240° 52′ 30″, 228.51 feet to the intersection of the easterly line of Fort street with the southerly line of King street; thence

3.  323° 16′ 20″, 96.60 feet along the southwesterly line of King street; thence

4.  323° 13′ 00″, 134.85 feet along said southwest line of King street to the most northerly corner of the Emmeluth building; thence

5.  322° 53′ 00″, 40 feet along the northeast line of said Emmeluth building (which line is also the aforesaid southwest line of King street) to the northeast corner thereof, which is also on the northwest line of Bishop street; thence

6.  52° 57′ 00″, 233.6 feet along the said northwest line of Bishop street to the northeast line of Merchant street; thence

7.  143° 54′ 00″, 131.95 feet along said northeast line of Merchant street; thence

8.  145° 00′ 00″, 53.3 feet along said northeast line of Merchant street to the place of beginning.

Containing an area of 66,329.60 square feet, more or less.

## V.

And plaintiff and petitioner further represents that Lorrin A. Thurston, Arthur P. Peterson, C. Bolte and Godfrey Brown, trustees; John A. Cummins; Kapeka M. Cummins, wife of John A. Cummins; Thomas B. Cummins, Mary C. Kibling, otherwise called Mary I. Creighton, otherwise called May A. Creighton, otherwise called May A. Kibling, Matilda K. Walker, otherwise called Kaumakaokame Walker, Jane P. Merseberg, and Flora Crowell, otherwise called Flora Hiram, children of the said John A. Cummins; Lydia A. Cummins, wife of the said Thomas B. Cummins; John Cummins, Thomas Cummins, Raplee Cummins, Mosley Cummins, Wood Cummins and Brickwood Cummins, children of the said Thomas B. Cummins and Lydia A. Cummins; Thomas B. Walker, husband of the said Matilda K. Walker; John P. Walker, Thomas B. Walker, Jr., and Matilda Walker Constabel, children of the said Matilda K. Walker and Thomas B. Walker; Adolph Constabel, husband of the said Matilda Walker Constabel; James K. Merseberg, husband of the said Jane P. Merseberg; Jane P. Cummins Merseberg, King Thomas, otherwise called King Thomas Merseberg, James Merseberg, Malie Merseberg Blais-

dell, Turilla Merseberg Joy, Jane Merseberg, Matilda Merseberg Robinson, Charles Merseberg, Abigail Merseberg, Ida Merseberg, William Merseberg, Helen Merseberg and Madeline Merseberg, children of the said Jane P. Merseberg and James K. Merseberg; John D. Blaisdell, husband of the said Malie Merseberg Blaisdell; Barney Joy, husband of the said Turilla Merseberg Joy; Henry P. Robinson, Jr., husband of the said Matilda Merseberg Robinson; Charles A. Kibling, husband of the said Mary C. Kibling; Edith Kibling and May Kibling, children of the said Charles A. Kibling; Charles Mahoe; Hattie Mahoe, wife of the said Charles Mahoe; Abraham Fernandez; Cushman Carter, trustee; Ariana Austin, Herbert Austin, Walker Austin and Edith Austin, heirs at law of James W. Austin, deceased; Herbert Austin and Walker Austin, as executors and testamentary trustees under the will of James W. Austin, deceased; Samuel M. Damon, trustee; E. O. Hall & Son, Ltd., an Hawaiian corporation; Hawaiian Trust Company, Limited, an Hawaiian corporation; Office Supply Co., Ltd., an Hawaiian corporation; Halstead & Co., Ltd., an Hawaiian corporation; The Bank of Hawaii, Ltd., an Hawaiian corporation; Charles M. Cooke, Limited, an Hawaiian corporation; Anna C. Cooke, C. Montague Cooke, Jr., Clarence H. Cooke, George P. Cooke, Richard A. Cooke, Alice T. Cooke and Theodore A. Cooke, beneficiaries under the last will and testament of Charles M. Cooke, deceased; and John Smith, William Thompson, Robert Jones, Samuel Robertson, Julius Brown, Sarah Stiles, Mary Stone, Jane Williams and Anna Forsyth, unknown owners and claimants; claim to be the owners of, or interested in the property herein and hereby sought to be condemned.

## VI.

And in this behalf this plaintiff and petitioner avers and shows that during the times herein mentioned, E. O. Hall & Son, Ltd., Hawaiian Trust Company, Limited, Office Supply Co., Ltd., Halstead & Co., Ltd., The Bank of Hawaii, Ltd., and Charles M. Cooke, Limited, were and still are corporations duly formed and organized, and now existing, acting and doing business within the aforesaid Territory of Hawaii, under and pursuant to the laws of the Territory of Hawaii.

And in this behalf this plaintiff and petitioner further avers and shows that John Smith, William Thompson, Robert Jones, Samuel Robertson, Julius Brown, Sarah Stiles, Mary Stone,

Jane Williams and Anna Forsyth, named herein as defendants, are fictitious names, and are meant to represent owners and claimants of interest in said property, the true names of whom are unknown to this plaintiff and petitioner.

That each of the defendants so named has, or claims to have some right, title or interest in and to the land above described, the exact nature of which is unknown to this plaintiff and petitioner.

## VII.

That the value of the aforesaid tract and parcel of land and its appurtenances sought to be condemned and acquired herein by your petitioner, is the sum of two hundred and forty-five thousand dollars ($245,000).

## VIII.

That it is the intention of your petitioner in good faith to complete the work and improvements for which, as herein alleged, the said tract and parcel of land, with its said appurtenances, are herein sought to be acquired and condemned.

## IX.

That all the preliminary steps required by law have been taken and exist, to entitle your petitioner to institute these proceedings.

Wherefore, the said plaintiff and petitioner, The United States of America, prays the court that a jury may be empaneled for an inquiry and assessment of the compensation to be paid by the United States of America for the said property, as described and set forth in this petition; unless such jury should, by the defendants herein, be waived, in which event such compensation to be fixed by the court; and that upon payment into court by the United States of America, of an amount of compensation equal to the sum so assessed by the jury or court as the value of the land above described, possession may be awarded it by this court, according to law; and that the absolute title in fee simple to the said property by [be] and thereby vest, in the said United States of America, for the purposes aforesaid; and that the court will divide the sum so paid, and order its distribution among the several claimants, as to their respective rights herein; and for such other and further orders as may be proper

in proceedings for the condemnation of private property to the public use aforesaid.

And your petitioner further prays that process be duly issued by this honorable court, requiring the said parties to appear before this court, on a day set by the judge thereof for the hearing of this petition, then and there to make answer to this petition, and to abide the further order and judgment of the court in the premises.

(Sgd.)   Robt. W. Breckons,
United States Attorney, District of Hawaii.

United States of America,   ⎱
   District of Hawaii,     ⎰ ss.

Robert W. Breckons being first duly sworn according to law, deposes and says that he is the United States District Attorney in and for the Territory and District of Hawaii; that he has been duly and regularly authorized to bring this action by the Attorney General of the United States of America; that he has read the foregoing petition, and knows the contents thereof, and that the facts therein stated he believes to be true.

(Sgd.)   Robt. W. Breckons.
Subscribed and sworn to before me this 23rd day of December, A. D. 1910.

(Sgd.)   A. E. Murphy,
[Seal]                Clerk United States District Court,
Territory of Hawaii.

Several of the defendants named have been served with summons and most of those have appeared and demurred to the petition. Service by publication of summons upon those not served is now being made pursuant to the statute. Rev. Laws, Hawaii, sec. 500.

The defendant, Lorrin A. Thurston, has filed a disclaimer.

The grounds of demurrer are as follows:

1.   That the petition does not state a cause of action because,—(a) it does not allege the necessity for the acquisition of the land therein sought to be condemned for the purposes therein specified, or any of them; (b) that it does not appear that the Secretary of the Treasury or any other governmental officer

or authority has designated the land therein described and proposed to be taken, or any part thereof, as being land necessary for the enlargement of the existing site therein described, or requested or directed the taking of said land, or any part thereof; (c) that it does not allege that it is the opinion of the Secretary of the Treasury that it is necessary or advantageous to the government to acquire the land therein specified for the United States by condemnation under judicial process; (d) that it does not allege that application for the commencement of these proceedings is made or has been made by the Secretary of the Treasury or any other authorized officer of the United States to the Attorney General of the United States; (e) that it does not appear that these proceedings were instituted within thirty days from the receipt of an application therefor at the Department of Justice; (f) that it does not allege that it is the intention of the United States to operate the building to be erected at said site as a United States post-office, United States custom-house and other governmental offices or for any other governmental purpose when the said building is completed.

2. That the petition is unintelligible, ambiguous and uncertain, because—(a) it does not specify or describe the "certain ground" which the Secretary of the Treasury is authorized and directed to acquire by statute as in the first paragraph alleged; (b) it describes in the third paragraph certain land as "the land desired for the enlargement of the last described site," but does not specify by whom said land is so desired; (c) it does not set forth what preliminary steps required by law have been taken and exist to entitle the petitioner to institute these proceedings as alleged in the ninth paragraph.

3. That it does not show that any appropriation has been or will be made by Congress to compensate the defendants for said land and improvements.

4. That it alleges conclusions of law instead of statements of facts upon which the court is asked to determine that all the

preliminary steps required by law have been taken and exist to entitle the plaintiff to institute these proceedings.

5.   That no map accurately delineating the land sought to be condemned and its location accompanies the petition as prescribed by the practice in the courts of record of the Territory of Hawaii.

6.   That it does not show an inability to agree upon the amount to be paid any defendant for his or its interest in the land, or that any attempt was made to so agree.

7.   That it does not pray or provide for a separate assessment by a jury of the value of the interests of the several defendants in the property sought to be condemned.

8.   That it appears from the petition that the defendants will be denied a separate trial as to the assessment of the value of their respective interests in the property.

The provisions of the act of Congress of August 1st, 1888, 25 Stat. L. 357, taken together with those contained in chapter 40 of the Revised Laws of Hawaii, require that the petition in this case should show expressly, or by necessary inference, that, (1) the Secretary of the Treasury is authorized to procure real estate for the erection of a public building; (2) that in his opinion it is necessary or advantageous to the government to acquire, by condemnation under judicial process, the specific land sought to be condemned; (3) that such land is to be put to a specified public use; (4) should contain a statement of whether the land sought to be condemned includes the whole or only a part of an entire tract or parcel, with a description of each and every piece of land included therein; and (5) it must be accompanied by a map which correctly delineates the land and its location.

Reference may be made to the form prescribed in 1 Loveland's Forms of Federal Practice, 150.

The provision in section 1 of the act of August 1st, 1888, that it shall be the duty of the Attorney General to cause proceedings to be commenced within thirty days from the receipt

of an application therefor from the Secretary of the Treasury is probably to be regarded as directory only. That such an application has been made is sufficiently averred by the allegation of paragraph IX of the petition, which is not, as contended by certain of counsel for the defendants, a mere conclusion of law.

For the purposes of pleading ultimate facts as distinguished from evidential facts need only to be stated. *McAllister v. Kuhn,* 96 U. S. 87; *Sorenson v. United States* (Ante p 291).

It will be seen that the petition in this case complies with the first, third and fourth of the above mentioned requisites. The descriptions contained in paragraphs II, III and IV of the petition show sufficiently that the land here sought to be condemned is the remaining portion of a certain city block in Honolulu, a part of which is now the property of the United States and constitutes one entire tract or parcel within the meaning of the statute. The court takes judicial notice of the names and location of the streets in Honolulu.

The petition was not accompanied by a map, but if, upon a map being filed, it should appear that the tract contains several pieces of land held in separate titles, or ownerships, it would be necessary, under the statute, to describe each piece.

The petition is defective, however, in that it fails to meet the second and fifth of said requirements. It is not sufficient to allege that the land is "desired" for the enlargement of the site for the proposed public building. And the statutory requirement of an accompanying map is absolute. *Campbell v. Steiner,* 20 Haw. 365.

It is contended that Congress intended to leave it to this court to determine the amount of land to be taken and the necessity for its condemnation. There is no merit in the contention. Congress has determined the necessity for an enlargement of the federal building site at Honolulu. The question of necessity is not one of a judicial character. *Backus v. Fort Street Union Depot Co.,* 169 U. S. 557, 568. And under the provisions of the act of August 1st, 1888, it is for the Secretary of the Treasury to decide what particular additional land it is

necessary or advantageous to condemn under judicial process for the purpose mentioned. *United States v. Oregon Ry. & Nav. Co.,* 16 Fed. 524, 528. See also *United States v. Certain Lands in Narragansett,* 145 Fed. 654. The quantity of land to be condemned is a legislative question. *United States v. Gettysburg Electric Railway,* 160 U. S. 668, 685. But it is not necessary that Congress should itself select the particular land to be taken. *Chappell v. United States,* 160 U. S. 499, 510.

Section 9 of an act of Congress approved June 30, 1906, 34 Stat. L. 772, authorized and directed the Secretary of the Treasury to acquire by purchase, condemnation or otherwise a suitable site for the United States post-office, court-house, and custom-house, at Honolulu, at a cost not to exceed one hundred and fifty thousand dollars. On the same day a further act was approved (34 Stat. L. 789) by which there was appropriated for such purpose out of any money in the treasury not otherwise appropriated, the sum of one hundred and fifty thousand dollars.

On May 30, 1908, a public buildings act was approved, the 18th section of which provided as follows: " That for the purpose of beginning the construction of a suitable and commodious fireproof building for the accommodation of the United States post-office, United States custom-house, United States courts, and other governmental offices at Honolulu, Hawaii, one hundred thousand dollars. Provided, that this authorization shall not be construed as fixing the limit of cost of said building at the sum hereby named, but the building hereby provided for shall be constructed or planned so as to cost, complete, including fireproof vaults, heating and ventilating apparatus, and approaches, but exclusive of site, not exceeding eight hundred and fifty thousand dollars." 35 Stat. L. 541. The 34th section of that act authorized the Secretary of the Treasury, unless otherwise specifically directed, to enter into contracts within the full limit of cost as so fixed by Congress for carrying out the provisions of the act.

An act approved March 4, 1909, 35 Stat. L. 945, appropriated the sum of one hundred and fifty thousand dollars "for continuation of building under present limit." Section 20 of an act approved June 25, 1910, 36 Stat. L. 696, provided, "that the Secretary of the Treasury be and he is hereby authorized and directed to acquire by purchase, condemnation, or otherwise, additional ground for the enlargement of the present site for the use and accommodation of United States post-office, United States custom-house, and other governmental offices at Honolulu, Territory of Hawaii, at a cost not to exceed three hundred and fifty thousand dollars; said sum of three hundred and fifty thousand dollars shall be available from the amounts heretofore authorized for the acquisition of a site and the erection of a suitable building at Honolulu." Section 33 of that act, amending section 3734 of the Revised Statutes, provided that, "hereafter no money shall be paid nor contracts made for the payment for any site for a public building in excess of the amount specifically appropriated therefor."

It is claimed that the provision last referred to, which prohibits the making of contracts for the payment for any public building site in excess of the amount specifically appropriated therefor is enough to prevent the acquisition of a site through condemnation proceedings in the absence of such an appropriation. The answer to this contention is that condemnation proceedings are *in invitum* and devoid of any element of contract. See *Randolph on Eminent Domain*, sec. 228.

The court is asked to take judicial notice of the fact that out of the first of said appropriations the sum of $104,000 has already been expended in the acquisition of the site referred to in paragraph II of the petition. From this state of facts it is argued that there is no existing appropriation for the acquisition of the additional property now sought to be condemned, and that, therefore, this action cannot be maintained.

. It is not necessary to decide whether the court is at liberty to take judicial notice that the sum of $104,000 has been expended as claimed..

It is not clear that there is no appropriation available for the payment of such compensation as may be awarded in this case.   The sum of $150,000 was originally appropriated for the site, from which, it is claimed $104,000 should be deducted as having been expended, leaving a balance on that appropriation of $46,000.   On May 30, 1908, the sum of $100,000 was appropriated for beginning the construction of the proposed building, and on March 1, 1909, the further sum of $150,000 for "continuation of building" was added.   On June 25, 1910, the sum of $350,000 was made available from the amounts previously authorized for the acquisition of a site and the erection of a building.   It would seem that the sum of $296,000 of the moneys appropriated for site and building remains unexpended without taking into consideration the additional sum of $750,000 up to which amount the Secretary of the Treasury was authorized to contract by the act of May 30, 1908.   The petition alleges that the value of the land sought to be condemned is $245,000.   It is not necessary, however, to further discuss the status of those appropriations.

A prior appropriation of money by Congress is by no law required as a condition precedent to condemnation proceedings by the United States. *United States v. Oregon Ry. & Nav. Co.*, 16 Fed. 524. See also *Bauman v. Ross*, 167 U. S. 548, 598; *United States v. Gettysburg Electric Railway*, 160 U. S. 684.   In the case of *In re Manderson*, 51 Fed. 501, 504, the court said:

"Congress intended that compensation should follow the condemnation proceedings in every case, and the omission to make an appropriation in advance to pay the damages assessed for taking the property constitutes no bar to such proceedings, for the faith of the government is always a guaranty for that payment."

Section 505 of the Revised Laws of Hawaii allows the plaintiff two years after final judgment to pay the amount assessed as compensation or damages for the taking of the property condemned.

The point that the petition does not allege an inability to

agree upon the amount to be paid for the land sought to be condemned is not well taken. *United States v. Oregon Ry. & Nav. Co.,* supra. Other reasons than the inability to agree upon the amount of compensation to be paid for the taking of the land may properly prompt the Secretary of the Treasury to cause condemnation proceedings to be instituted.

It is argued that the prayer of the petition does not provide for separate assessments of the values of the interests of the respective defendants, and that it would prevent separate trials as to such assessments.

It has been held that under the statutes of Hawaii the value of land sought to be taken by the United States in the exercise of the power of eminent domain shall be tried by jury. *United States v. Honolulu Plantation Co.,* 122 Fed. 581. There is nothing in this petition to prevent such trial by jury. Neither is there anything in the prayer which would interfere with the granting of separate trials if it should appear to the court that the defendants are entitled to such.

The Supreme Court has held, under a statute of Ohio, that all the owners of a specific parcel of land are to be treated as one party. *Kohl v. United States,* 91 U. S. 367, 377. But that question is not now before this court.

Lastly, it is contended that the requirement of a map is jurisdictional and that the failure to attach a map to the petition is a defect which cannot be remedied by amendment. For this, the case of *Campbell v. Steiner,* supra, is relied on. The citation does not support the contention. In that case leave to amend the petition was withheld, not because of the failure to file a map, but on the ground that the statute did not authorize the substitution of a new party for a sole party plaintiff. No reason is perceived why the court should be less liberal in allowing amendments to petitions in condemnation cases than in other actions at law.

The exceptions which are sustained are as follows:

On the demurrers of Cushman Carter, trustee, Samuel M. Damon, trustee, Ariana E. Austin, Herbert Austin, Walker

Austin, Edith Austin, and Herbert Austin and Walker Austin, as executors and testamentary trustees under the will of James W. Austin, deceased, as to points 3, 7 and 11.

On the demurrers of Anna C. Cooke, C. Montague Cooke, Jr., Clarence H. Cooke, George P. Cooke, Richard A. Cooke, Alice T. Cooke, Theodore A. Cooke, Office Supply Company, Limited, Charles M. Cooke, Limited, The Bank of Hawaii, Limited, and Hawaiian Trust Company, Limited, as to points 3, 7 and 9.

On the demurrer of E. O. Hall & Son, Limited, as to points 1 and 5.

On the demurrers of John A. Cummins, Kapeka M. Cummins, Charles Mahoe and Hattie Mahoe, as to point 3.

The remaining grounds of demurrer of the respective defendants are overruled.

The plaintiff is allowed twenty days in which to apply for leave to amend its petition, and in default of such application an order will be made dismissing the proceedings as to these demurrants.